IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| VOITH US INC.,<br><br>   Plaintiff,<br><br> v.<br><br>UNITED STATES,<br><br>   Defendant. | Case No. 1:24-cv-00029 |

## COMPLAINT

Plaintiff, Voith US Inc., by and through its counsel, hereby alleges and states as follows:

### NATURE OF THE ACTION

1. Plaintiff challenges the denial by U.S. Customs and Border Protection ("CBP") of Protest Numbers 390123128904, 390123128905, 390123128906, 280923110065, 280923110066, 160123106680, 390123128907, 200723101156, 151223100887, 151223100887, 200223100873, 140423100068, 170423105665, 170423105666, 370123100285, 390123128909, 270923100233, 370123100286, 170423105669, 390123128989, 530123108918, 151223100888, 530123108981, 390123129265, 390123129266, 040123103090, 140123107549, 240223100665, 370123100288, 390123129707, 390123129709, 390123129708, 200223100896, 390123129769, 390123129769, 390123130032, 390123130033, 390123130034, 550124107102, 550124107103, and 550124107103, regarding the classification of certain Voith QualiFlex press sleeves imported by Plaintiff.

1

## JURISDICTION

2. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

## THE PARTIES AND STANDING

3. Plaintiff is the importer of record of the merchandise that is the subject of this action.

4. Plaintiff is the person who filed the protests pursuant to Section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514, which were denied under Section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515, and are covered by this civil action; Plaintiff thus has standing to bring this action pursuant to 28 U.S.C. § 2631(a).

5. Defendant United States, CBP, is the party that denied the protests contested herein and is the statutory defendant under 28 U.S.C. § 2631(a).

6. The protests covered by this action were timely filed with CBP at the port of entry or at the appropriate Center of Excellence and Expertise (CEE), and CBP thereafter denied same.

7. All liquidated duties have been paid.

8. Since the filing of this action, Plaintiff has continued to protest the liquidation of comparable imports, as documented in **Exhibit 1**, to preserve the ability of this Court to render judgment relating to all entries falling within the scope of this action.

## FACTUAL BACKGROUND AND DESCRIPTION OF MERCHANDISE

9. The merchandise at issue is QualiFlex press sleeves. The QualiFlex press sleeves are manufactured in, and imported to the United States from, Germany.

2

10. The QualiFlex press sleeves are cylindrical sheaths, composed of non-woven thread embedded in polyurethane elastic. The yarns are not bonded together; rather, the surrounding plastic holds the yarns in place, like steel rebar embedded in concrete. *See* **Exhibit 2** at 6.

11. Press sleeves are an integral part of modern papermaking machines.

12. Until the 1980s, in order to remove excess water, papermaking machinery required that sheets of paper and felt be pressed together between hard cylindrical rolls. *See* **Exhibit 3** at 3. Since the 1980s, however, papermakers have employed a "shoe press," whereby paper and felt are pressed between one hard cylindrical roll and one roll with an irregular shape, *i.e.*, the "shoe." *Id*. The shoe press enables the application of pressure over a far greater duration by increasing the amount of time the paper spends pressed against the curve of the hard counter-roll.

13. To operate, a shoe press requires a flexible press sleeve over the shoe. A hard cylinder cannot work because it cannot conform to the irregular shape of the shoe. A soft cylinder cannot work because it cannot rotate independently from the shoe itself.

14. A press sleeve serves two critical functions in a shoe press. First, the press sleeve removes water out of the nip-gap ("nip") by its surface design – typically by incorporating grooves or holes – to achieve higher dryness within the press section of the papermaking machine. Notably, this occurs with no application of heat to accomplish the drying function. Instead, the dewatering occurs solely through the application of pressure, with the shoe press squeezing the paper against the press sleeve.

15. Second, the press sleeve moves the paper sheet through the nip of the shoe press. Without the press sleeve, it is impossible for the shoe press to function.

3

16. Putting these two elements together, if a press sleeve is not installed in a shoe press, the papermaking machine would not only lose the ability to dewater the paper, it also would be unable to move the paper through the shoe press.

17. The shoe and the press sleeve are designed to work in conjunction with each other. *See* **Exhibit 3** at 3. Both the shoe and the press sleeve are essential components, as one component could not function without the other.

18. The QualiFlex press sleeve is designed exclusively to cover the shoe of a shoe press papermaking machine. The press sleeve has no other function and has no other purpose than to be installed on the papermaking machinery.

19. The QualiFlex press sleeves imported by Plaintiff were classified by CBP under subheading 3926.90.9985, HTSUS, as "Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Other: Other."[1]

20. Plaintiff claims that the imported merchandise should be classified under subheading 8439.99.1000, HTSUS, as "Machinery for making pulp of fibrous cellulosic material or for making or finishing paper or paperboard (other than the machinery of heading 8419); parts thereof: Other: Of machinery for making paper or paperboard."

21. On June 1, 2020, Voith requested a tariff classification ruling for QualiFlex press sleeves. *See* **Exhibit 4**. At that time, Voith believed that the applicable subheading was 5910.00.1090, "Transmission or conveyor belts or belting, of textile material, whether or not impregnated, coated, covered or laminated with plastics, or reinforced with metal or other material; Of man-made fibers; Other."

---

[1] Subheading 3926.90.9985 was officially discontinued effective July 1, 2024 per the Change Record for the Harmonized Tariff Schedule of the United States (2024 Revision 4). The new subheading for the same article description is 3926.90.9989.

4

22. On June 17, 2020, CBP asked for additional information, which Voith provided. *See* **Exhibits 5** and **6**.

23. On July 21, 2020, CBP issued New York Ruling Letter ("NY") N312791. *See* **Exhibit 7**. CBP determined the applicable subheading for QualiFlex press sleeves was 5911.32.0080, "Textile fabrics and felts, endless or fitted with linking devices, of a kind used in papermaking or similar machines: Weighing 650 g/m2 5911.32.00 or more: Other."

24. On October 9, 2020, Voith submitted a request for reconsideration that included numerous schematics, technical drawings, and photographs not previously transmitted to CBP. *See* **Exhibit 8**. In its request, Voith argued that "the 'QualiFlex' press sleeve does not belong in Chapter 59 and is more akin to commodities of Chapter 84." *Id*. at 2. Specifically, Voith provided information demonstrating "that the press sleeve should be classified . . . in Section XVI, Chapter 84." *Id*. at 8. Relatedly, Voith argued that NY N312791 contained factual errors because the QualiFlex press sleeve "is not a textile fabric, not a textile product, not a textile article, not a felt, and specifically not woven, braided, knitted, or crocheted." *Id*. at 7.

25. On July 28, 2021, CBP proposed to revoke Customs Ruling NY N312791 and replace it with Customs HQ Ruling H315231. *See* **Exhibit 9**. Therein, CBP took the position "that press sleeves are properly classified, in heading 3926, HTSUS, specifically in subheading 3926.90.9985, HTSUS, which provides for 'Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Other: Other.'" *Id*. at 3 (internal p. 16).

26. In determining that the QualiFlex press sleeves should be classified in subheading 3926.90.9985, HTSUS, CBP relied upon three factual assumptions that were outcome-determinative.

27. First, while acknowledging Plaintiff's position that the QualiFlex press sleeves

5

should be classified under Chapter 84, CBP determined that classification under Chapter 84 was improper because QualiFlex press sleeves "*are added to* a type of machine classifiable under Chapter 84, HTSUS, but are not in and of themselves such a machine ***or a part of such a machine***." *Id*. at 10 (internal p. 23) (emphasis in italics in original; emphasis in italics and bold added).

28.     Second, CBP described QualiFlex press sleeves as "***optional components*** designed to merely increase the efficiency of such a machine." *Id*. at 11 (internal p. 24) (emphasis added).

29.     Third, CBP supported its characterization of press sleeves by describing them as "versatile enough to be utilized for the same functionality ***across different products***." *Id*. (emphasis added).

30.     On September 29, 2021, CBP finalized its adoption of Customs HQ Ruling H315231 and its proposed revocation of Customs Ruling NY N312791. *See* **Exhibit 10**.

31.     Customs HQ Ruling H315231, which determined that the QualiFlex press sleeves should be classified under subheading 3926.90.9985, HTSUS, relied on three incorrect factual assumptions (highlighted in bold text above): (i) the press sleeves are not a part of a machine classifiable under Chapter 84; (ii) the press sleeves are "optional components"; and (iii) the press sleeves can be utilized "across different products." *Id.* at 9 (internal p. 150).

32.     Press sleeves are part of a machine classifiable under Chapter 84. CBP's claim that press sleeves "are added to" papermaking machinery (a point that CBP considered important enough to emphasize through italics) is incorrect. *Id.* at 8 (internal p. 149). A shoe press papermaking machine is designed to operate – and must operate – with the press sleeve in place, making the press sleeve an integral part of the machinery.

6

33. Press sleeves are not "optional components" to a shoe press papermaking machine. They are instead necessary components. Without a press sleeve covering the shoe, a shoe press papermaking machine cannot function.

34. The press sleeves cannot be used "across different products." The press sleeves are purpose-built parts of the exact shoe press papermaking machinery for which they are designed.

35. The General Rules of Interpretation ("GRI") instruct that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1. When "goods are, prima facie, classifiable under two or more headings, . . . [t]he heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a), "Guidance for Interpretation of the Harmonized System," 54 Fed. Reg. 35,127, 35,129 (Aug. 23, 1989).

36. Note 2(a) to Section XVI of the Harmonized Tariff Schedule instructs that "[p]arts which are goods included in any of the headings of chapter 84 . . . are in all cases to be classified in their respective headings." Consistent with Note 2(a), heading 8439 emphasizes that "parts" are included in its scope.

37. Regardless of whether the QualiFlex press sleeve is treated as part of the shoe press or as papermaking machinery in its own right, heading 8439 is the most appropriate classification because papermaking and press sleeves are inextricably intertwined and are essential parts and components of the shoe press papermaking machinery.

38. Although CBP applies the HTSUS independently of other countries, it also recognizes that classifications by other customs services can be a useful reference point, because worldwide tariff classifications are harmonized at the six-digit level. Notably, the QualiFlex

7

press sleeves are classified under heading 8439 in all other countries where Plaintiff imports them. *See* **Exhibit 11**.

39.     Binding Tariff Information from the European Union shows that the QualiFlex press sleeves are recognized as commodity number 8439.9900. *See id.* at 4.

40.     Because Customs HQ Ruling H315231 determined that the QualiFlex press sleeves should be classified under subheading 3926.90.9985, HTSUS, Plaintiff is required to import the QualiFlex press sleeves under this subheading, and it has done so for all press sleeves entered after CBP's issuance of HQ H315231.

41.     Between October 28, 2022, and September 22, 2023, CBP liquidated 41 entries. *See* **Exhibit 1.** For each of these 41 entries that were liquidated, Plaintiff filed protests that CBP denied. *See id.*

42.     The 41 entries that were liquidated formed the initial basis of this action, which Plaintiff filed on February 6, 2024.

43.     Subsequent to the initiation of this action in February 2024, Plaintiff continued to protest the liquidation of later entries, as shown in **Exhibit 1**. For these subsequent protests, which were made on the basis of the pendency of this action, CBP has either suspended liquidation or not yet ruled.

## COUNT I

44.     Plaintiff incorporates by reference paragraphs 1–43 of this Complaint.

45.     Plaintiff's QualiFlex press sleeves are properly classified as an integral part of papermaking machinery under U.S. Harmonized Tariff System subheading 8439.99.10 ("Machinery for making pulp of fibrous cellulosic material or for making or finishing paper or paperboard (other than the machinery of heading 8419); parts thereof: Other: Of machinery for

8

making paper or paperboard"). The QualiFlex press sleeves are specially designed for use only in – and are an integral part of – shoe press papermaking machines. A shoe press cannot operate without a press sleeve in place and removing this purportedly "optional" part of the shoe press would render the machinery unusable.

46. By incorrectly treating the QualiFlex press sleeves as "optional" equipment that potentially can be used in a variety of uses, CBP fundamentally misunderstood the basic characteristics of the entries at issue. These two misunderstandings led to an incorrect classification.

47. The errors in the classification are reinforced by the approach taken by other countries, which uniformly classify the good under subheading 8439.99.10, which is the only subheading that comports with the way in which press sleeves actually operate. Because HTS classifications are coordinated at the six-digit level worldwide, and because CBP itself has stated that it considers classification issues of other countries to be meaningful and persuasive (if not outcome-determinative), the treatment of these products worldwide also is evidence of the error in the approach adopted by CBP in this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court render judgment that: (1) the imported merchandise at issue is properly classifiable as claimed by Plaintiff in subheading 8439.99.10, HTSUS; (2) subheading 8439.99.10, HTSUS, should be applied both to prior, unliquidated entries of such merchandise and to ongoing and future entries; (3) orders reliquidation of the entries covered by this civil action with a refund of duties plus interest, as provided by law; and (4) grant such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

*s/Gregory Husisian*
Gregory Husisian
202.945.6149
ghusisian@foley.com
**Foley & Lardner LLP**
Washington Harbour
3000 K Street, NW, Suite 600
Washington, DC 20007-5109

John Turlais
Parker White
414.297.5584 (JT)
414.297.5388 (PW)
jturlais@foley.com
pwhite@foley.com
**Foley & Lardner LLP**
777 E. Wisconsin Ave., Ste. 3800
Milwaukee, WI 53202

Dated:  February 3, 2026          *Counsel to Voith US Inc.*