# UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE

VOITH US INC.,

   Plaintiff,

   v.

UNITED STATES,

   Defendant.

Before: Hon. Timothy C. Stanceu, Judge

Court No. 24-00029

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PARTIAL MOTION TO DISMISS AND MOTION FOR AN EXTENSION OF TIME**

July 9, 2026

Gregory Husisian
John Turlais
Parker White
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
(202) 672-5300

Counsel for Voith US Inc.

- 1 -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

INTRODUCTION .............................................................................................................. 5

BACKGROUND ............................................................................................................... 6

STANDARD OF REVIEW ................................................................................................ 8

ARGUMENT ..................................................................................................................... 9

**I.**    The Motion Should Be Denied Because the Disputed Protests Are Properly Before the Court ................................................................................................................................. 9

    A.    Voith Properly Commenced This Section 1581(a) Action and Satisfied the Statutory Requirements By Expressly Identifying Each Disputed Protest in the Amended Summons ... 10

    B.    CBP Had Notice of This Action Yet Denied, Rather Than Suspended, the Disputed Protests, and the Government Cannot Rely on That Inconsistent Conduct To Defeat Jurisdiction ..................................................................................................................... 14

    C.    If The Court Concludes That Any Procedural Defect Exists, It Should Preserve the Disputed Protests Within This Action So That the Court Retains the Ability To Award Effective Relief ................................................................................................................ 17

**II.**    At a Minimum, the Court Should Permit Limited Discovery Concerning CBP's Post-Summons Handling of the Disputed Protests Before Ruling on Defendant's Motion ................. 20

CONCLUSION.................................................................................................................. 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Associated Dry Goods Corp. v. United States*,
521 F. Supp. 473 (Ct. Int'l Trade 1981) .................................................................................. 13

*Autoalliance International, Inc. v. United States*,
357 F.3d 1290 (Fed. Cir. 2004) ............................................................................................... 11

*Auxin Solar, Inc. v. United States*,
698 F. Supp. 3d 1353 (Ct. Int'l Trade 2024) ............................................................................ 9

*Carnival Cruise Lines, Inc. v. United States*,
866 F. Supp. 1437 (Ct. Int'l Trade 1994) ................................................................................ 18

*Cedars-Sinai Med. Ctr. v. Watkins*,
11 F.3d 1573 (Fed. Cir. 1993) ............................................................................................... 8, 9

*DaimlerChrysler Corp. v. United States*,
442 F.3d 1313 (Fed. Cir. 2006) .......................................................................................... 11, 12

*Detroit Zoological Soc'y v. United States*,
630 F. Supp. 1350 (Ct. Int'l Trade 1986) ............................................................................... 20

*Detroit Zoological Soc'y v. United States*,
647 F. Supp. 147 (Ct. Int'l Trade 1986) ........................................................................... 17, 18

*Epoch Design LLC v. United States*,
36 C.I.T. 26 (2012) ................................................................................................................ 11

*Global Sourcing Group, Inc. v. United States*,
33 C.I.T. 389 (2009) ..................................................................................................... 11, 12, 13

*Greentech Energy Sols., Inc. v. United States*,
714 F. Supp. 3d 1315 (Ct. Int'l Trade 2024) .......................................................................... 21

*International Custom Products, Inc. v. United States*,
33 C.I.T. 79 (2009) ........................................................................................................... 11, 12

*International Custom Products, Inc. v. United States*,
32 C.I.T. 465 (2008) ............................................................................................................... 12

*Norman G. Jensen, Inc. v. United States*,
687 F.3d 1325 (Fed. Cir. 2012) .......................................................................................... 21, 22

*United States v. Associated Dry Goods Corp.*,
   682 F.2d 212 (C.C.P.A. 1982) ........................................................................ 13

*Pollak Imp.-Exp. Corp. v. United States*,
   52 F.3d 303 (Fed. Cir. 1995) ................................................................ 9, 10, 11

*Wear Me Apparel Corp. v. United States*,
   511 F. Supp. 814 (Ct. Int'l Trade 1981) ...................................................... 18, 19

Statutes

19 U.S.C. § 1514 ............................................................................................... 6

19 U.S.C. § 1515(c) ............................................................................ 15, 16, 21, 22

28 U.S.C. § 1581(a) ................................................................................. passim

28 U.S.C. § 1585 ............................................................................................. 18

28 U.S.C. § 2632 ............................................................................................. 10

28 U.S.C. § 2636(a)(1) ..................................................................................... 10

28 U.S.C. § 2637(a) ......................................................................................... 12

**INTRODUCTION**

Plaintiff Voith US Inc. ("Voith"), by and through undersigned counsel, respectfully submits this opposition to the United States' ("Defendant") Partial Motion to Dismiss and Motion for an Extension of Time to Respond to the Balance of Claims, filed on May 6, 2026 (the "Motion").

In its Motion, Defendant seeks to sever and dismiss 32 of the 38 protests underlying this action under 28 U.S.C. § 1581(a), together with the entries covered by those protests. As an initial matter, Voith does not oppose severance and dismissal of Protest Nos. 550124107102 and 550124107103. Voith further agrees to amend its complaint to remove those two protests within 30 days of the Court's resolution of the Motion.

Voith does, however, oppose Defendant's request to sever and dismiss the remaining 30 protests (the "disputed protests"). As set forth in Part I, Defendant's dismissal theory is not compelled by the governing statutes or the authorities on which Defendant relies. Voith properly commenced this action under 28 U.S.C. § 1581(a), and its amended summons expressly identified each of the disputed protests.

Moreover, after this action was filed, CBP had notice that the disputed protests were part of the same pending classification controversy before this Court, yet denied those protests even while suspending later-filed protests involving the same merchandise and the same issue. On this record, the Government should not be permitted to rely on CBP's own inconsistent post-summons conduct to defeat judicial review. Dismissal would serve no substantive purpose. The more appropriate course would be to preserve the disputed protests and entries within this action so that the Court retains the ability to award effective relief should Voith prevail.

At a minimum, if the Court concludes that the present record does not resolve the jurisdictional issue in Voith's favor, it should deny the Motion without prejudice or defer ruling to permit discovery. As explained in Part II, Defendant's motion depends on the legal significance of CBP's

post-summons denials of the disputed protests. But the current record does not reveal why CBP denied those protests after this action was filed, why CBP treated them differently from later-filed protests involving the same merchandise and classification issue, or what instructions, if any, governed that treatment. Because those factual issues bear directly on Defendant's jurisdictional theory, dismissal would be premature absent factual development.

## BACKGROUND

Voith is the importer of record for QualiFlex press sleeves manufactured in Germany. Pursuant to Customs Headquarters Ruling H315231, U.S. Customs and Border Protection ("CBP") has classified the imported merchandise under Harmonized Tariff Schedule ("HTS") subheading 3926.90.9985 since no later than September 29, 2021. *See* Ex. A (administrative notice on CBP finalizing its adoption of Customs HQ Ruling H315231 and its proposed revocation of Customs Ruling NY N312791).

Voith disputes CBP's classification ruling and contends that the merchandise is properly classified under HTS subheading 8439.99.1000. Accordingly, Voith has filed protests under section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514, covering entries of that merchandise. *See* Ex. B (Voith protest schedules).

Between March 2023 and August 2023, Voith filed 36 protests covering 36 customs entries. *See id*. Each protest contained the same narrative explanation of Voith's disagreement with CBP's classification of the merchandise.

On March 22, 2023, Voith filed protests covering 16 entries, with entry dates ranging from December 2021 to April 2022. *See id*. Voith filed two additional protests on March 27 and March 31, 2023. *See id*. In April 2023, Voith filed protests covering three additional entries. *See id*. In May 2023, Voith filed protests covering five entries. *See id.* In June 2023, Voith filed protests

covering five more entries. *See id*. On July 5, 2023, Voith filed a protest covering one additional entry, and on August 16, 2023, it filed protests covering three more entries. *See id.*

CBP began denying Voith's protests on August 10, 2023, when it denied Protest No. 240223100665, one of the protests Voith had filed in May 2023. *See* Ex. C (sample denied protest notices). CBP's notice of denial stated:

> Protest No. 240223100665 filed at Port 2402 has been Denied for the following reasons: Classification as entered is correct. See Ruling H315231[.] Any person whose protest has been denied, in whole or in part, has the right to file a civil action contesting the denial of the protest in accordance with chapter 169 of title 28 of the United States Code (28 USC §§ 2631 et seq.) within the time prescribed by section 2636 (28 USC § 2636).

*See id*.

On October 25, 2023, CBP denied Protest No. 040123103090, which Voith had also filed in May 2023. *See id.* On October 30, 2023, CBP denied three additional protests (Protest Nos. 160123106680, 151223100887, and 151223100888), all of which Voith had filed in March of 2023. *See id*. On November 27, 2023, CBP denied Protest No. 140123107549, which Voith had filed in April 2023. *See id.* CBP's denial notices were substantively identical. *See id*.

On February 6, 2024, Voith filed the Summons in this action. Dkt. No. 4. On February 7, 2024, Voith filed an Amended Summons. Dkt. No. 5. Attached to the Amended Summons was a protest schedule identifying the 36 protests Voith had filed between March 2023 and August 2023. The schedule also identified the six protests that CBP had already denied. For each of the remaining 30 protests, the schedule stated "With CBP," indicating that CBP had not yet ruled on those protests. On May 3, 2024, Defendant filed the administrative documentation for all 36 protests and their underlying entries. Dkt. Nos. 10-13.

After filing the Amended Summons, Voith continued to file protests covering additional entries of QualiFlex press sleeves. *See* Ex. B. For example, Voith filed protests on March 13, 2024,

April 3, 2024, and December 11, 2024. *See id*. In each protest filed after the Amended Summons, Voith used a revised narrative that expressly referenced this pending action before the Court. *See id*. CBP has uniformly suspended all timely filed Voith protests submitted after the Amended Summons. *See id*. For example, in response to Protest No. 550124107096, CBP notified Voith: "Protest No. 550124107096 filed at Port 5501 has been suspended." *See* Ex. D (sample suspended protest notice). Voith continues to file such protests, including one filed on September 24, 2025. *See* Ex. B. CBP likewise continues to suspend them, including a suspension issued on April 2, 2025. *See id*. CBP's suspension notices are substantively identical.[1]

By contrast, CBP treated the 30 protests identified as "With CBP" on the Amended Summons differently. Despite these entries being explicitly identified in the amended summons as part of this Court action, CBP instead denied all 30 of those protests between June 2024 and November 2024. *See* Exs. B, C. CBP's denial notices were substantively identical to those it had issued for the six protests denied before the Amended Summons. *See* Ex. C.

On May 6, 2026, Defendant moved to sever and dismiss those 30 protests on the ground that this Court lacks subject matter jurisdiction over them. Dkt. No. 23.

<u>**STANDARD OF REVIEW**</u>

When a Rule 12(b)(1) motion challenges the factual basis for subject matter jurisdiction, the jurisdictional allegations are not accepted as true, and the underlying facts are subject to resolution by the Court. As the Federal Circuit has explained, where a "Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, … [a]ll … facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993) (citations omitted).

---

[1] CBP denied rather than suspended Protests 550124107102 and 550124107103, both of which were filed after the Amended Summons, but CBP's denials were based on the untimeliness of the protests.

In resolving such a motion, the Court "is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Id.* at 1584 (citations omitted). Thus, where jurisdiction turns on disputed facts, the Court may consider materials beyond the complaint and, if necessary, permit factual development directed to the jurisdictional issue.

Because this action is brought against the United States, Voith must establish the predicate facts necessary to bring its claims within the Court's statutory grant of jurisdiction and the Government's waiver of sovereign immunity. *See* Auxin Solar, Inc. v. United States, 698 F. Supp. 3d 1353, 1364-65 (Ct. Int'l Trade 2024).

**ARGUMENT**

### I.    The Motion Should Be Denied Because the Disputed Protests Are Properly Before the Court

On the record developed to date, Defendant has not shown that the 30 disputed protests must be severed and dismissed for lack of jurisdiction; by contrast, as detailed below, Voith can show that the disputed protests should be retained within the action. This Court's jurisdiction is defined by the statutes Congress enacted, not by additional requirements untethered from the statutory text. *See* Pollak Imp.-Exp. Corp. v. United States, 52 F.3d 303, 307 (Fed. Cir. 1995). As explained below, Voith properly commenced this action under 28 U.S.C. § 1581(a) and expressly identified each of the disputed protests in its amended summons. Defendant's authorities do not compel the further rule Defendant asks the Court to adopt—namely, that each protest listed on the summons must already have been denied at the time of filing or else be dismissed from the action.

Nor should Defendant be permitted to rely on CBP's own post-summons conduct to manufacture the jurisdictional defect it now asserts. After this action was filed, CBP had notice that the disputed protests were part of the same pending classification controversy before this Court.

Indeed, CBP eventually began suspending later-filed protests involving the same merchandise and the same classification issue. On this record, the Government should not be permitted to give dispositive jurisdictional effect to CBP's inconsistent handling of materially identical protests. At minimum, if the Court concludes that some procedural defect exists, the more appropriate course would be to preserve the disputed protests and entries within this action so that the Court retains the ability to award effective relief should Voith prevail, rather than dismiss them based on a sequencing objection that would extinguish judicial review.

Finally, if the Court concludes that the present record is insufficient to resolve the issue, it should defer ruling to permit further factual development bearing on Defendant's jurisdictional theory.

Each of these points is developed in detail below.

### A.    Voith Properly Commenced This Section 1581(a) Action and Satisfied the Statutory Requirements By Expressly Identifying Each Disputed Protest in the Amended Summons

Defendant has not shown that the disputed protests must be dismissed under the statutory framework governing actions brought under 28 U.S.C. § 1581(a). Section 1581(a) provides that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). Such an action is commenced by filing a summons, *see* 28 U.S.C. § 2632, and is timely if brought "within one hundred and eighty days after the date of mailing of notice of denial of a protest." 28 U.S.C. § 2636(a)(1).

As the Federal Circuit explained in *Pollak*, these provisions impose two jurisdictional requirements concerning the form and timeliness of the action: "that a suit be instituted by filing a

summons and that the suit be filed within 180 days after the denial of a protest." *Pollak Imp.-Exp. Corp.*, 52 F.3d at 306.

Voith satisfied those requirements. It commenced this action by filing a summons, followed the next day by an amended summons. Dkt. Nos. 4, 5. And it did so on February 6, 2024, within 180 days of CBP's August 10, 2023 denial of Protest No. 240223100665, the earliest denial among Voith's protests concerning QualiFlex press sleeves. Voith's amended summons also expressly identified all 36 protests it sought to place before the Court, including the 30 disputed protests then still pending before CBP. On those facts, Defendant cannot show that dismissal of the disputed protests is required by the statutory text.

Defendant's motion depends on reading into the statute an additional requirement that does not appear there: that every protest listed on a summons must already have been denied at the time the summons is filed. *See* Dkt. No. 23 at 5-6. But Defendant cites no controlling authority that imposes that rule, and the cases on which it relies do not do so.

Defendant principally invokes *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313 (Fed. Cir. 2006), together with two Court of International Trade ("CIT") decisions applying it, *International Custom Products, Inc. v. United States*, 33 C.I.T. 79 (2009) and *Global Sourcing Group, Inc. v. United States*, 33 C.I.T. 389 (2009).[2] But those decisions address a different issue: whether the summons sufficiently identifies the protests or entries over which jurisdiction is invoked. They do not hold that a summons is jurisdictionally defective unless every protest listed on it had already been denied when the summons was filed.

---

[2] Defendant cites to other cases including *Autoalliance International, Inc. v. United States*, 357 F.3d 1290 (Fed. Cir. 2004), and *Epoch Design LLC v. United States*, 36 C.I.T. 26 (2012), for non-controversial propositions that do not support the severance of the disputed protests from Voith's summons and thus do not require a direct response in this Brief.

In *DaimlerChrysler*, the importer filed a summons stating that it intended to challenge all related denied protests and attached a schedule that identified only 74 of 81 protests. 442 F.3d at 1315-16. After the 180-day period had expired, the importer sought to amend the summons to add the seven omitted protests. *Id.* at 1316. The question before the Federal Circuit was whether the original summons had sufficiently identified those seven omitted protests within the statutory period. *Id.* at 1317, 1319. The court held that it had not. Because each protest denial forms a separate claim, the summons must specifically identify each protest over which jurisdiction is invoked. *Id.* at 1319-20.

That holding does not resolve the question presented here. *DaimlerChrysler* stands for the proposition that the summons must identify the protests at issue. It does not hold that every protest identified on the summons must already have been denied at the time of filing for the Court to retain the action as to that protest. Here, unlike in *DaimlerChrysler*, Voith expressly identified all 36 protests it intended to place before the Court. There is no omission, no ambiguity, and no notice problem.

Nor do *International Custom* or *Global Sourcing* establish the rule Defendant proposes. In *International Custom*, the Court primarily addressed issues under 28 U.S.C. § 2637(a), not the issue presented here. 33 C.I.T. at 83-84. Defendant relies on a passing formulation stating that the prerequisites to suit include that Customs denied the protest and that the importer filed a summons listing the protest or entry number within 180 days of the protest denial. *Id*. at 83. But that statement was not the holding of the case, and it did not address whether a summons may identify protests that remained pending before CBP at the time of filing. Indeed, the language appears to have been carried forward from a footnote in an earlier temporary restraining order decision in the same litigation. *See* Int'l Custom Prods., Inc. v. United States, 32 C.I.T. 465, 466 n.3 (2008). Defendant

seeks to transform that passing language into a rigid jurisdictional rule that overrides the statutory text. It cannot bear that weight.

*Global Sourcing* likewise does not help Defendant. There, the issue was whether certain entries had been identified on the summons at all. 33 C.I.T. at 393. The Court did not consider whether a summons filed within 180 days of one protest denial may also identify related protests that were still pending before CBP. *Global Sourcing* therefore also provides no support for Defendant's proposed timing rule.

In short, neither *DaimlerChrysler* nor the Court of International Trade cases Defendant cites hold that a new and separate summons must be filed within 180 days after the denial of every protest listed on the summons. Those cases require identification, not the additional timing limitation Defendant asks the Court to create. Voith satisfied that identification requirement by listing all 36 protest numbers in its amended summons.

Tellingly, the only case Defendant cites as an actual application of its theory is *Associated Dry Goods Corp. v. United States*, 521 F. Supp. 473 (Ct. Int'l Trade 1981). There, the Court dismissed one protest from a summons because "it was not denied until after … the summons … was filed." *Id*. at 476. But Defendant omits that the decision was later vacated by the Court of Customs and Patent Appeals, a predecessor to the Federal Circuit. United States v. Associated Dry Goods Corp., 682 F.2d 212, 213 (C.C.P.A. 1982). A vacated decision cannot support the broad jurisdictional rule Defendant urges here, particularly where the opinion itself contains no meaningful analysis of the statutory text or the issue Defendant asks this Court to decide.

Accordingly, Defendant has not shown that the disputed protests must be dismissed under the governing statutes or controlling precedent. Voith timely commenced this action by filing a summons within 180 days of the denial of a protest, and it expressly identified each disputed

protest in its amended summons. That filing was sufficient to put the Government on notice that those entries were part of this court action. There is no support for Defendant's effort to impose an additional jurisdictional requirement that neither the statute nor its cited authorities compel.

**B.      CBP Had Notice of This Action Yet Denied, Rather Than Suspended, the Disputed Protests, and the Government Cannot Rely on That Inconsistent Conduct To Defeat Jurisdiction**

The chronology of the disputed protests also is highly relevant. Defendant's motion depends on giving dispositive effect to CBP's post-summons handling of the disputed protests. But where CBP had notice of this action, expressly knew that those protests were part of the same pending classification dispute, and then treated them inconsistently with later-filed protests raising the same issue, the Government should not be permitted to rely on that conduct to foreclose review.

When Voith filed its summons and amended summons in February 2024, CBP was on notice that Voith had commenced an action under 28 U.S.C. § 1581(a) challenging CBP's classification of QualiFlex press sleeves and that Voith had specifically identified all 36 protests at issue, including the 30 disputed protests then marked "With CBP." Dkt. Nos. 4, 5. By the time CBP later acted on those 30 protests, it therefore had notice that the classification issue presented by those protests was already before this Court and that Voith had expressly identified those protests as part of this action.

CBP's own subsequent conduct confirms that suspension, not denial, was the appropriate course once CBP had notice of this litigation. After Voith filed the amended summons, Voith continued to file protests concerning additional entries of the same merchandise and the same classification issue. As described above, CBP uniformly suspended those later-filed protests. *See* Exs. B, D. The suspension notices were standardized and reflected CBP's recognition that, once

the issue was before this Court, the proper administrative response was to suspend further protests presenting the same question rather than continue issuing rote denials.

Yet CBP did not do that for the 30 disputed protests that had already been expressly identified in Voith's amended summons. Instead, between June 2024 and November 2024, CBP denied all 30 of them, generally using the same form denial language it had used before this action was filed. *See* Exs. B, C. That inconsistency matters. CBP suspended later protests involving the same importer, the same merchandise, the same classification issue, and the same pending litigation, while denying the earlier pending protests that Voith had already identified as part of this case. On this record, the most reasonable inference is that CBP's denial of the disputed protests reflected administrative inconsistency or error, not a jurisdictionally meaningful distinction.

The Government now seeks to turn that inconsistency into a jurisdictional bar. It should not be permitted to do so. The timing and form of CBP's post-summons actions were matters within CBP's control, not Voith's. Voith did what it could do: it timely filed its summons, amended summons, and protest schedule identifying all 36 protests and thereby placed CBP on notice that the disputed protests were part of the same ongoing classification controversy already before the Court. Having received that notice, CBP should not have denied those protests in a manner inconsistent with its treatment of later-filed protests raising the same issue, and the Government should not now be permitted to rely on that inconsistent conduct to extinguish review.

The statutory framework reinforces that conclusion. Congress has provided that, when "an action is commenced in the Court of International Trade that arises out of a protest or application for further review," "all administrative action pertaining to such protest or application shall terminate and any administrative action taken subsequent to the commencement of the action is null and void." 19 U.S.C. § 1515(c). Voith does not suggest that the Court must now definitively resolve

the full reach of section 1515(c) as to the disputed protests in order to deny Defendant's motion. But the statute at minimum reflects Congress's judgment that, once protest-related litigation is before this Court, continued administrative adjudication of the same controversy is not to be treated as routine or legally insignificant.

That is especially true here. After Voith filed its summons and amended summons, CBP had actual notice not only that a classification case had been filed, but that Voith had expressly identified the disputed protests as part of the same pending controversy. CBP nonetheless denied those protests, while later suspending materially identical protests involving the same importer, the same merchandise, and the same issue. On this record, Defendant cannot just assume that those post-filing denials were ordinary administrative acts entitled to dispositive jurisdictional effect. Section 1515(c), together with CBP's inconsistent treatment of materially identical protests, confirms that dismissal is unwarranted on the present record.

As detailed in Part II, Defendant's motion assumes, without factual development, that CBP's denials of the disputed protests were procedurally regular and should be given the jurisdictional significance Defendant now assigns to them. But the present record suggests otherwise. It suggests that CBP, despite actual notice of this action, denied the disputed protests even though it later suspended materially identical protests involving the same merchandise and classification issue. That inconsistency goes directly to the factual premises underlying the Motion.

In these circumstances, dismissal would elevate CBP's post-summons administrative handling over the substance of the parties' dispute and would permit the Government to benefit from conduct that the present record shows was inconsistent and erroneous. The Court should reject that result and deny Defendant's request to sever and dismiss the disputed protests.

- 16 -

C.    **If The Court Concludes That Any Procedural Defect Exists, It Should Preserve the Disputed Protests Within This Action So That the Court Retains the Ability To Award Effective Relief**

If the Court concludes that Voith did not fully satisfy every procedural requirement Defendant attributes to 28 U.S.C. § 1581(a), it still should not dismiss the disputed protests. In the circumstances presented here, dismissal would serve no substantive purpose and would elevate form over function in a manner this Court has previously declined to do. More importantly, dismissal would not merely require Voith to take some additional procedural step. It would instead extinguish judicial review of claims involving entries that Voith expressly identified in its amended summons and that CBP later denied after this action already had been commenced. The appropriate course, at minimum, is to preserve those disputed protests and their underlying entries within this action rather than dismiss them, to preserve the ability of the Court to order effective relief should Voith prevail.

To be sure, denial of a protest ordinarily is a prerequisite to suit under section 1581(a), and the summons must identify the protests over which jurisdiction is invoked. But those requirements do not justify dismissal here. Voith expressly identified the disputed protests in its amended summons, and CBP later denied them while this action was already pending. Defendant's objection, therefore, is not that the disputed protests were omitted from the action or unknown to the parties; it is only that the denial occurred after, rather than before, Voith identified those protests in its summons. In the circumstances presented here—where Defendant had actual notice from the outset that the disputed protests were part of this action—that sequencing point does not justify dismissal.

This Court has recognized that rigid insistence on procedural sequence is not required where doing so would amount to an "empty formalism." Detroit Zoological Soc'y v. United States, 647 F. Supp. 147, 148 (Ct. Int'l Trade 1986). In *Detroit Zoological*, the Court explained that

- 17 -

although denial of a protest is ordinarily required, this Court had previously permitted a section 1581(a) case to proceed where the protest denial occurred after the complaint was filed because dismissal would have been "an empty formalism." *Id*. (citing Wear Me Apparel Corp. v. United States, 511 F. Supp. 814, 817 (Ct. Int'l Trade 1981)). Likewise, in *Carnival Cruise Lines, Inc. v. United States*, the Court permitted amendment to include protests denied after the original complaint was filed, concluding that dismissal would be an "empty formalism." 866 F. Supp. 1437, 1442 (Ct. Int'l Trade 1994).

Those decisions reflect the principle that where no substantive interest is served by forcing a plaintiff through duplicative procedural steps, this Court may allow the action to proceed in the interest of fairness and efficient judicial administration. *See also* 28 U.S.C. § 1585 (granting the CIT full equitable powers as enjoyed by a federal court). That principle applies here with even greater force. Voith did not omit the disputed protests from its summons or conceal their existence. To the contrary, Voith expressly identified all 36 protests in its amended summons, including the 30 protests then still pending before CBP and marked "With CBP." Dkt. No. 5. Defendant therefore had notice from the outset that Voith sought review of the full set of protests concerning the same merchandise and the same classification dispute. Defendant's own conduct confirms as much: on May 3, 2024, Defendant filed the administrative documentation for all 36 protests and their corresponding entries. Dkt. Nos. 10-13. At no point then did Defendant contend that the disputed protests were outside the scope of this action or that Voith would be required to commence separate proceedings later if CBP denied them.

By the time Defendant moved to sever and dismiss the disputed protests, CBP had already denied those protests and the time to commence separate section 1581(a) actions had passed. That sequence matters—not because jurisdiction may be created by consent, acquiescence, or delay, but

because it confirms the practical consequence of dismissal here. Dismissal would not simply require a new filing or some ministerial procedural correction. It would instead foreclose judicial review of claims that Voith identified from the outset of this case and that the Government itself treated as part of the same dispute when it filed the administrative record for all 36 protests.

Voith's amended summons expressly listed all 36 protests, including the 30 then pending before CBP, and CBP later completed the procedural sequence by denying those protests after this action was already pending. Meanwhile, despite notice of the pending litigation and despite later suspending materially identical protests involving the same merchandise and issue, CBP denied the disputed protests rather than suspending them. In these circumstances, the Court should not impose a rigid procedural consequence that would convert CBP's post-summons handling of those protests into a complete bar to review.

The Court should reject that result. The concerns that animated *Wear Me Apparel*, *Detroit Zoological*, and *Carnival Cruise Lines* are present here in even stronger form. In those cases, dismissal would merely have required the plaintiff to take an unnecessary additional procedural step. Here, dismissal would do more: it would deprive Voith of any judicial review of the disputed protests, even though Voith identified them on the amended summons from the outset, Defendant had notice of them, and CBP later denied them after this action was already pending. If requiring a new filing in those earlier cases would have been an "empty formalism," then dismissal here—where a new filing is no longer available and the entries have already liquidated—would be even less justifiable.

Accordingly, if the Court concludes that some procedural defect exists, it should decline to sever and dismiss the disputed protests and should instead preserve them, and their underlying entries, within this action. That course would align with the practical approach taken in the cases

above, would avoid rewarding CBP for denying protests that it should not have denied, and would preserve adjudication of claims that Voith diligently and expressly placed before the Court at the outset of this action. In these circumstances, the entries should remain part of the action so that the Court retains the ability to award effective relief should Voith prevail on the merits.

**II.      At a Minimum, the Court Should Permit Limited Discovery Concerning CBP's Post-Summons Handling of the Disputed Protests Before Ruling on Defendant's Motion**

If the Court concludes that the present record does not yet resolve the jurisdictional issue in Voith's favor, it should await the conduct of discovery to allow development of the jurisdictional facts. Where a Rule 12(b)(1) motion places facts underlying jurisdiction in dispute, the Court is not confined to the pleadings and may allow targeted factual development before ruling. *See*, *e.g.*, Detroit Zoological Soc'y v. United States, 630 F. Supp. 1350, 1360 (Ct. Int'l Trade 1986).

Such discovery is warranted here because Defendant's motion depends on the premise that CBP's post-summons denials of the 30 disputed protests were valid administrative acts that should now be given dispositive jurisdictional effect. But that premise itself raises factual questions the present record does not answer. The central question is why, after Voith commenced this action and expressly identified the disputed protests in its amended summons, CBP denied those protests rather than suspending them as it later did with materially identical protests involving the same merchandise and the same classification issue.

The current record already indicates that CBP had notice of this action when it later denied the disputed protests. Voith's amended summons expressly identified all 36 protests, including the 30 disputed protests then marked "With CBP." Dkt. No. 5. Those protests involved the same importer, the same merchandise, and the same classification issue already before the Court. Yet CBP did not suspend the disputed protests. Instead, it denied them between June 2024 and November 2024.

That treatment is impossible to reconcile with CBP's own subsequent handling of later-filed protests involving the same dispute. After Voith filed the amended summons, it continued filing protests concerning the same merchandise and classification issue, and CBP uniformly suspended those later-filed protests rather than denying them. *See* Exs. B, D. At a minimum, that inconsistency warrants factual development as to the basis for CBP's treatment of the disputed protests and the legal significance, if any, of the later denials on which Defendant now relies.

Section 1515(c) further supports allowing that factual development. Section 1515(c) reflects the statutory principle that once protest-related litigation is commenced in this Court, continued administrative action on the protested matter needs to reflect the fact that a case has been filed. As noted, above, the statute provides that, if an action is commenced in the Court of International Trade that arises out of a protest or application for further review, "all administrative action pertaining to such protest or application shall terminate and any administrative action taken subsequent to the commencement of the action is null and void." 19 U.S.C. § 1515(c). Whether and to what extent that provision bears on CBP's treatment of the disputed protests here is itself a question that warrants factual development, particularly given that these exact protests were identified in the action Voith had already filed.

CBP's own practice in similar circumstances underscores the need for discovery. This Court has observed that CBP's suspension of related protests after commencement of a CIT action needs to be consistent with section 1515(c). *See* Greentech Energy Sols., Inc. v. United States, 714 F. Supp. 3d 1315, 1322 (Ct. Int'l Trade 2024). And the Government has likewise taken the position in other litigation that section 1515(c) terminates further administrative adjudication once related litigation has commenced. *See* Norman G. Jensen, Inc. v. United States, 687 F.3d 1325, 1328 (Fed. Cir. 2012) ("The government states that, pursuant to 19 U.S.C. § 1515(c) and 19 C.F.R. § 177.7(b),

- 21 -

Customs was barred from ruling on Jensen's protests by reason of the action Jensen filed in the Court of International Trade on August 13, 2009."). Discovery is therefore appropriate to determine whether CBP treated the disputed protests as related to this action, whether CBP or Defendant cross-referenced those protests to this case, what guidance or instructions governed CBP's handling of them, and why the disputed protests were denied while later-filed protests presenting the same issue were suspended.

Relevant issues for discovery thus include, at a minimum: (1) the protest files for the 30 disputed protests; (2) internal CBP communications concerning those protests after commencement of this action; (3) any decisional memoranda, instructions, or guidance concerning whether those protests should be denied, suspended, or otherwise held in abeyance; and (4) any documents reflecting whether CBP or Defendant linked the disputed protests to this case. To the extent necessary, limited declarations or depositions from the relevant CBP personnel may also be appropriate.

Because Defendant's jurisdictional theory depends on the validity and significance of CBP's post-summons denials, and because the present record leaves unresolved why CBP treated the disputed protests differently from later-filed protests involving the same dispute, the Court should not dismiss the disputed protests on the current record. At minimum, it should defer any such jurisdictional ruling until discovery has taken place.

## CONCLUSION

For the foregoing reasons, Voith respectfully requests that the Court deny Defendant's Partial Motion to Dismiss as to the 30 disputed protests and preserve those protests, and their underlying entries, as part of this action. Voith does not oppose dismissal of Protest Nos. 550124107102 and 550124107103 and requests leave to amend its complaint within 30 days of the Court's

resolution of the Motion solely to remove those two protests and make any conforming changes required by the Court's order.

In the alternative, if the Court concludes that any procedural defect exists as to the disputed protests, Voith respectfully requests that, in light of CBP's own treatment of these protests, the Court preserve those protests and their underlying entries within this action so that the Court retains the ability to award effective relief should Voith prevail on the merits.

And finally, and at a minimum, if the Court concludes that the present record is insufficient to resolve the jurisdictional issues raised by Defendant's motion, Voith respectfully requests that the Court defer ruling and permit limited jurisdictional discovery concerning CBP's post-summons handling of the disputed protests.

Dated: July 9, 2026                                  Respectfully submitted,


                                                     *s/ Gregory Husisian*
                                                     Gregory Husisian
                                                     202.945.6149 (GH)
                                                     ghusisian@foley.com
                                                     **Foley & Lardner LLP**
                                                     Washington Harbour
                                                     3000 K Street, NW, Suite 600
                                                     Washington, DC 20007-5109

                                                     John Turlais
                                                     Parker White
                                                     414.297.5584 (JT)
                                                     414.297.5388 (PW)
                                                     jturlais@foley.com
                                                     pwhite@foley.com
                                                     **Foley & Lardner LLP**
                                                     777 E. Wisconsin Ave., Ste. 3800
                                                     Milwaukee, WI 53202

                                                     *Counsel to Plaintiff Voith US Inc.*

- 23 -

## UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE

VOITH US INC.,

   Plaintiff,

   v.

UNITED STATES,

   Defendant.

Before: Hon. Timothy C. Stanceu, Judge

Court No. 24-00029

## CERTIFICATE OF COMPLIANCE

I, Greg Husisian, of Foley & Lardner LLP, who is responsible for Plaintiff's memorandum in opposition to Defendant's motion for partial dismissal of complaint, dated July 9, 2026, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains approximately 5,843 words.

Dated: July 9, 2026

*s/ Gregory Husisian*
Gregory Husisian
202.945.6149 (GH)
ghusisian@foley.com
**Foley & Lardner LLP**
Washington Harbour
3000 K Street, NW, Suite 600
Washington, DC 20007-5109

*Counsel to Plaintiff Voith US Inc.*

- 24 -

# UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE

VOITH US INC.,

    Plaintiff,

    v.

UNITED STATES,

    Defendant.

Before: Hon. Timothy C. Stanceu, Judge

Court No. 24-00029

## [PROPOSED] ORDER

Upon consideration of Defendant's motion for partial dismissal of complaint for lack of subject matter jurisdiction, Plaintiff's response thereto, and all other papers and proceedings had herein, it is hereby

**ORDERED** that Defendant's motion is denied as to Protest Nos. 390123128904, 390123128905, 390123128906, 280923110065, 280923110066, 390123128907, 200723101156, 200223100873, 140423100068, 170423105665, 170423105666, 370123100285, 390123128909, 270923100233, 370123100286, 170423105669, 390123128989, 530123108918, 530123108981, 390123129265, 390123129266, 370123100288, 390123129707, 390123129709, 390123129708, 200223100896, 390123129769, 390123130032, 390123130033, and 390123130034, and those protests, and their underlying entries, shall remain part of this action; and it is further

**ORDERED** that Protest Nos. 550124107102 and 550124107103, and their underlying entries, are severed and dismissed from this action; and it is further

**ORDERED** that Plaintiff shall file, within 30 days of the date of this Order, an amended complaint solely to remove Protest Nos. 550124107102 and 550124107103 and to make any conforming changes consistent with this Order; and it is further

**ORDERED** that Defendant shall file its response to the amended complaint within 30 days after the amended complaint is filed.

SO ORDERED.


Dated: _____

Hon. Timothy C. Stanceu, Judge
U.S. Court of International Trade

**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE THE HONORABLE TIMOTHY C. STANCEU, JUDGE

VOITH US INC.,

    Plaintiff,

    v.

UNITED STATES,

    Defendant.

Before: Hon. Timothy C. Stanceu, Judge

Court No. 24-00029

**[ALTERNATIVE PROPOSED] ORDER**

Upon consideration of Defendant's motion for partial dismissal of complaint for lack of subject matter jurisdiction, Plaintiff's response thereto, and all other papers and proceedings had herein, it is hereby

**ORDERED** that the Court's ruling on Defendant's motion is deferred as to Protest Nos. 390123128904, 390123128905, 390123128906, 280923110065, 280923110066, 390123128907, 200723101156, 200223100873, 140423100068, 170423105665, 170423105666, 370123100285, 390123128909, 270923100233, 370123100286, 170423105669, 390123128989, 530123108918, 530123108981, 390123129265, 390123129266, 370123100288, 390123129707, 390123129709, 390123129708, 200223100896, 390123129769, 390123130032, 390123130033, and 390123130034; and it is further

**ORDERED** that the disputed protests identified above, and their underlying entries, shall remain part of this action pending further order of the Court; and it is further

**ORDERED** that the parties are permitted to conduct limited jurisdictional discovery concerning CBP's post-summons handling of the disputed protests identified above; and it is further

**ORDERED** that Protest Nos. 550124107102 and 550124107103, and their underlying entries, are severed and dismissed from this action; and it is further

**ORDERED** that, within 30 days of the date of this Order, the parties shall confer and submit a joint proposed schedule governing such limited jurisdictional discovery and supplemental briefing concerning Defendant's motion; and it is further

**ORDERED** that Plaintiff shall file, within 30 days of the date of this Order, an amended complaint solely to remove Protest Nos. 550124107102 and 550124107103 and to make any conforming changes required by this Order; and it is further

**ORDERED** that Defendant shall file its response to the amended complaint within 30 days after the amended complaint is filed.


SO ORDERED.


Dated: _____        _____

                                   Hon. Timothy C. Stanceu, Judge
                                   U.S. Court of International Trade

- 28 -